# 12-4547-cv

### United States Court of Appeals for the Second Circuit

Authors Guild, Inc., Australian Society Of Authors Limited, Union Des
Ecrivaines Et Des Ecrivains Quebecois, Angelo Loukakis, Roxana
Robinson, Andre Roy, James Shapiro, Daniele Simpson, T.J. Stiles, Fay
Weldon, Authors League Fund, Inc., Authors' Licensing and Collecting
Society, Sveriges Forfattarforbund, Norsk Faglitteraer Forfattero OG
Oversetterforening, Writers' Union of Canada, Pat Cummings, Erik
Grundstrom, Helge Ronning, Jack R. Salamanca,

Plaintiffs-Appellants,

v.

Hathitrust, Cornell University, Mary Sue Coleman, President, University of
Michigan, Mark G. Yudof, President, University of California, Kevin Reilly,
President, University of Wisconsin System, Michael McRobbie, President,
Indiana University,

Defendants-Appellees,

National Federation of the Blind, Georgina Kleege, Blair Seidlitz, Courtney
Wheeler,

Intervenor Defendants-Appellees.

Appeal from the United States District Court for the
Southern District of New York (New York City)

### Brief of *Amici Curiae* Disability Law Professors
### in Support of Intervenor National Federation of the Blind

Michael Waterstone
Loyola Law School*
919 Albany St.
Los Angeles, CA 90015
213-736-2243
michael.waterstone@lls.edu

Christopher H. Knauf
Knauf Associates
2001 Wilshire Blvd, Suite 510
Santa Monica, CA 90403
(310) 829-4250
ck@goodlaw.biz

Robert Dinerstein
American University Washington
College of Law*
4801 Massachusetts Avenue, NW
Washington, DC 20016
202-274-4141
rdiners@wcl.american.edu

Michael Stein
Harvard Law School*
1563 Massachusetts Avenue
Cambridge, MA 02138
617-495-1726
mastein@law.harvard.edu

*Counsel for Disability Law Professors*

*Institutions provided for identification purposes only

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici curiae* state that they do not have any parent corporation and no publicly-held corporation has an ownership stake of 10% or more in *amici curiae*.

Dated:    June 4, 2013                    By: <u>/s/ Christopher Knauf</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................. ii

STATEMENT OF INTEREST ............................................................1

ARGUMENT....................................................................................1

  I.  The Americans with Disabilities Act and Section 504 of the
      Rehabilitation Act Were Major Federal Initiatives to Bring
      People with Disabilities Into the Mainstream of Society. .........................2

  II.  Courts Are Routinely Asked To Reconcile Laws and Policies of
      General Applicability With the Needs of People with
      Disabilities.................................................................................5

  III. The District Court Properly Harmonized the Policies Behind
      Federal Disability Laws and the Copyright Act......................................10

  APPENDIX A (LIST OF AMICI CURIAE).........................................................14

## TABLE OF AUTHORITIES

**Cases**

*Board of Trustees of the University of Alabama v. Garrett*,
  531 U.S. 356 (2001)..........................................................................5

*Buck v. United States Department of Transportation Proceedings*,
  56 F.3d 1406 (D.C. Cir. 1995)..........................................................8

*Crowder v. Kitigawa*, 81 F.3d 1480 (9th Cir. 1995) ...........................7

*Franco-Gonzales v. Holder*, 767 F.Supp.2d 1034 (C.D. Cal. 2010) ...................7, 8

*Hargrave v. Vermont*, 340 F.2d 27 (2nd Cir. 2003)...........................6, 7

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2nd Cir. 2003).....................7

*Kort v. Diversified Collection Services Inc.*, 270 F. Supp. 2d 1017 (N.D. Ill.
  2003), aff'd in part, 349 F.3d 530 (7th Cir. 2005)................................9

*Mary Jo C. v. New York State and Local Retirement System*,
  707 F.3d 144 (2nd Cir. 2013) ..........................................................6

*Morton v. Mancari*, 417 U.S. 535 (1974) ...........................................9

*Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).........................11

*Ward v. Skinner*, 943 F.2d 157 (1st Cir. 1991)....................................9

*Washington v. Indiana High School Athletic Association*,
  181 F.3d 840 (7th Cir. 1999) ...........................................................7

**Statutes**

17 U.S.C. § 106 *et seq.*................................................................10

17 U.S.C. § 121..............................................................................11

20 U.S.C. § 1400 *et seq.*............................................................ 4, 10

42 U.S.C. § 12101(A)(2) ..................................................................2

42 U.S.C. § 12111 *et seq.*................................................................2

42 U.S.C. § 12131 *et seq.*................................................................2

42 U.S.C. § 12181 *et seq.*................................................................2

42 U.S.C. § 1973ee *et seq* ..............................................................10

42 U.S.C. §12101(A)(7). ...................................................................2

**Other Authorities**

2B Sutherland Statutory Construction § 51:2, § 59:8 (7th ed.) ..........................9

H. R. Rep. No. 101-485, pt. 2, at 108 (1990), *reprinted in* 1990
U.S.C.C.A.N. 303, 391, House Committee on Education and Labor..........11

**Regulations**

Nondiscrimination on the Basis of Disability: Accessibility of Web
Information and Services of State and Local Government Entities
and Public Accommodations, 75 Fed. Reg. 43460 (proposed
July 26, 2010) ......................................................................................................11

**Constitutional Provisions**

U.S. Const., Art. I, Section 8, Clause 8................................................................10

## STATEMENT OF INTEREST

*Amici curiae* are law professors, identified in the attached Appendix A, who teach and write about disability law at law schools, colleges, and universities throughout the United States.  We have no personal stake in the outcome of this case;[1] our interest is in seeing proper consideration given to the policies set forth in federal disability law, including the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 .[2]

## ARGUMENT

*Amici* submit this brief with a single, narrow goal in mind: to urge the Court to interpret the Copyright Act consistently with the important goals Congress established in the Americans with Disabilities Act and related laws.

---

[1] Pursuant to Local Rule 29.1 of the United States Court of Appeals for the Second Circuit, *amici* hereby certify that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person other than *amici* contributed money intended to fund preparing or submitting the brief.

[2] Pursuant to Federal Rule of Appellate Procedure 29, we note that all parties have consented to the filing of this brief.

1

I.   **The Americans with Disabilities Act and Section 504 of the Rehabilitation Act Were Major Federal Initiatives to Bring People with Disabilities Into the Mainstream of Society**

With the Americans with Disabilities Act (ADA), passed in 1990, Congress expressly intended to fundamentally transform the role of people with disabilities in society.   Finding that "historically, society has tended to isolate and segregate individuals with disabilities," 42 U.S.C. § 12101(A)(2), Congress decreed the Nation's goals for people with disabilities as assuring "equality of opportunity, full participation, independent living, and economic self sufficiency."  *Id.* at §12101(A)(7).  The ADA sought to ensure that the federal government played a strong role in eliminating discrimination in the public and private spheres.  *See,* 42 U.S.C. § 12111 *et seq.* (employment), 42 U.S.C. § 12131 *et seq.* (state and local government services), and 42 U.S.C. § 12181 *et seq.* (public accommodations).  The ADA Amendments Act of 2008 reaffirmed and strengthened this commitment.

Title II of the ADA focuses on how people with disabilities interact with state and local governments.  People with disabilities, like all citizens, use and rely on public authorities in many ways, including voting, licensing of various kinds, public insurance and medical programs, public

universities, access to courts, prisons, and encounters with police, as well as countless others. Title II sought to ensure that in these interactions discrimination was eliminated and the needs of people with disabilities were met. In so doing, Congress sought to extend many principles already established by Section 504 of the Rehabilitation Act of 1973, which prohibited disability discrimination by the federal government and other public entities that received federal funds. Title III of the ADA prohibits discrimination by privately-owned places of public accommodation, including restaurants, movie theaters, and private libraries and universities. The interest of people with disabilities in this case to access digital books involves potentially the interaction of all of these areas of law. As discussed below, the federal government's copyright protections must be consistent with Section 504 of the Rehabilitation Act. Similarly, public and private universities have obligations under Titles II and III of the ADA, respectively.

Access to technology, particularly in the context of higher education, is crucial to Congress achieving its goal of a more inclusive society. Especially in a world where students with disabilities have only known life with computers, the internet, and the Individuals with Disabilities

3

Education Act, 20 U.S.C. § 1400 *et seq.*, more students with disabilities than ever are enrolling in college.  This should be celebrated.  But to dramatically limit these students' access to library materials, as appellants urge, fundamentally transforms their college experience into something worse, and markedly different from their educational experience to date. This is not the society Congress envisioned when it passed the ADA.

The district court's decision recognized the important policies behind the ADA and related laws.  Throughout its opinion, the court referenced the necessity of allowing people with print disabilities to access visual works in a manner commensurate with others.  *See* Op. & Order at 15 (noting that the HathiTrust Digital Library (HDL) program "provides print-disabled individuals with access to the wealth of information within library collections") (internal citations omitted); *see also id.* at 21 (noting how the HDL provides "the unprecedented ability of print-disabled individuals to have an equal opportunity to compete with their sighted peers in the ways imagined by the ADA").  And the court's analysis reflected this approach: first, by reasoning that the needs of people with disabilities bolstered Defendants' right to fair use, and, second, by holding that the Chafee Amendment, permitting reproduced and distributed copies

4

for use by persons with disabilities, allowed Plaintiffs to comply with their

obligations under the Americans with Disabilities Act.

## II.   Courts Are Routinely Asked To Reconcile Laws and Policies of General Applicability With the Needs of People with Disabilities

Under both Title II of the ADA and the Rehabilitation Act, courts have

regularly been asked to reconcile laws of general applicability with the

unique needs of people with disabilities.  Before the ADA, public entities

that did not receive federal financial assistance, private employers, and

operators of privately-owned places of public accommodation were not

required to consider the needs of people with disabilities. The results were

often programs, services, or activities that intentionally or unintentionally

excluded them. *See Board of Trustees of the University of Alabama v. Garrett*,

531 U.S. 356, 391 (2001) (Appendix C to opinion of Breyer J. dissenting,

documenting evidence of unequal treatment of persons with disabilities by

public programs and services).  In the post-ADA period, in the public

services context, courts have consistently confronted tensions between

agency operations that sought to accomplish some public purpose and the

needs of people with disabilities that might not be met under existing

5

regimes.  In addition to agency operations, it is clear that Title II and Section 504 of the Rehabilitation Act apply to federal and state statutory schemes.  *See, e.g., Mary Jo C. v. New York State and Local Retirement System*, 707 F.3d 144, 157 (2nd Cir. 2013) (rejecting argument that the rules, policies, and practices subject to reasonable modification under Title II do not include state statutes).

Courts have sought to harmonize these potential conflicts by making adjustments or reasonable modifications to laws, policies, and procedures of public entities.  Put differently, courts look to interpret these laws in ways that make them consistent with the requirements of the ADA and Rehabilitation Act. For example, in *Mary Jo C., supra*, the plaintiff's mental illness interfered with her ability to comply with New York State law's strictly-enforced filing deadline for disability retirement benefits.  Rather than deferring to the entity's interpretation of which rules were sacrosanct, this court held that a waiver of the deadline for the plaintiff was a proper reasonable modification request.  *Id.* at 161.  Similarly, in *Hargrave v. Vermont*, 340 F.2d 27 (2nd Cir. 2003), part of Vermont's durable power of attorney statute allowed medical professionals to petition courts to invalidate durable powers of attorney executed by people with mental

6

illness.  As a reasonable modification to make the overall statutory scheme

nondiscriminatory, this court enjoined that portion of the statute.  *Id.* at 38.

And in *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2nd Cir. 2003), this court

found that the creation of New York City's Division of AIDS Services and

Income Support ("DASIS") was itself a reasonable accommodation to New

York's general public assistance and benefits services for individuals with

AIDS and other HIV-related diseases.

Outside of the Second Circuit, there are numerous examples of courts

attempting to harmonize state statutes and public agencies' actions with

the goals of disability laws through making reasonable modifications or

accommodations.  *See, e.g.*, *Washington v. Indiana High School Athletic

Association*, 181 F.3d 840 (7th Cir. 1999) (holding that high school athletic

age-eligibility rule could be waived if a particular athlete caused no

competitive disadvantage or safety threat); *Crowder v. Kitigawa*, 81 F.3d

1480 (9th Cir. 1995) (quarantine requirement needed to be modified to

accommodate individuals with visual impairments).

Similar principles apply to federal statutory and regulatory regimes.

In *Franco-Gonzales v. Holder*, 767 F.Supp.2d 1034 (C.D. Cal. 2010), the

plaintiffs were undocumented immigrants with severe mental illnesses.

7

They brought claims against the Department of Justice under Section 504 of the Rehabilitation Act, arguing that they were not adequately accommodated in proceedings initiated by the Department of Homeland Security and Immigration and Customs Enforcement.  Recognizing the Rehabilitation Act's goals of combating discrimination in public programs and making sure that people with disabilities have the "tools necessary to … make informed choices and decisions," *id.* at 1061, the court, citing 29 U.S.C. § 701(a)(5), held that existing safeguards were inadequate to satisfy the requirements of Section 504.  *See Franco-Gonzales,* 767 F.Supp.2d at 1052. Even in cases where courts deny the specific accommodation or modification a plaintiff has requested from a federal law or  program, courts have acknowledged the desirability of federal statutory schemes and administration incorporating the goals of laws such as the ADA and Rehabilitation Act.  *See, e.g., Buck v. United States Department of Transportation Proceedings*, 56 F.3d 1406 (D.C. Cir. 1995) ("Unless the agency could reasonably conclude that all limb-handicapped drivers are incapable of a certain task necessary to the safe operation of a vehicle, it would no doubt be improper for it to refuse such an individual, solely upon the basis of his handicap, the opportunity to demonstrate his proficiency at the

8

required task."); *Ward v. Skinner*, 943 F.2d 157, 161 (1st Cir. 1991) (noting that in administering a driving certification program, the Department of Transportation "did individualize its inquiry to some extent.  It did not simply rely upon its absolute anti-epilepsy rule") (internal citations omitted).

The harmonization evident between disability laws and other laws is not unique.  Where two statutes could conflict but could also be interpreted as consistent to accomplish both of their statutory objectives, courts routinely attempt to harmonize.  *See* 2B Sutherland Statutory Construction § 51:2 (7th ed.) ("Courts try to construe apparently conflicting statutes on the same subject harmoniously, and, if possible, give effect to every provision in both."); *id.* at § 59:8 ("Generally, when interpreting two statutory sections, courts attempt to harmonize them to give effect to their purposes and, if possible, reconcile them so as to uphold the validity of both.").[3]

---

[3] *See also Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."); *Kort v. Diversified Collection Services Inc.*, 270 F. Supp. 2d 1017, 1023 (N.D. Ill. 2003), aff'd in part, 349 F.3d 530 (7th Cir. 2005) ("When two federal statutes appear to conflict, absent a clearly expressed Congressional

### III.   The District Court Properly Harmonized the Policies Behind Federal Disability Laws and the Copyright Act

The tension at play in the cases above – between a law of general applicability that may serve important public purposes and the needs of people with disabilities – exists in this case.  The Copyright Act provides a limited monopoly for authors to encourage creativity.  The federal government has a longstanding dedication to protecting copyrights, a commitment that has both constitutional and statutory dimensions.[4]  At the same time, so as not to be left behind in the information age, people with print disabilities want and need to be able to access a wide range of printed materials.  Congress has a long history of legislating to protect people with disabilities, particularly in the areas of access to public programs and services.[5]

---

intention to the contrary, it is the duty of the courts to harmonize them where possible").

[4] *See* U.S. Const., Art. I, Section 8, Clause 8; *see also* 17 U.S.C. § 106 *et seq.*

[5] Laws that predate the Americans with Disabilities Act include the Education for All Handicapped Children Act, 20 U.S.C. § 1400 *et seq.* (later renamed "Individuals with Disabilities Education Act.") and the Voting Accessibility for the Elderly and Handicapped Act of 1964, 42 U.S.C. § 1973ee *et seq.*

The text and legislative history of the ADA make clear that its vision of accommodation and equal access should retain vitality as new technologies emerge.[6]  When Congress passed the Chafee Amendment, 17 U.S.C. § 121, in 1996 (six years after the passage of the Americans with Disabilities Act), it demonstrated a commitment to ensuring that people with disabilities could have access to information in ways that still provided authors with needed protections.  Courts should presume that Congress intended the Chafee amendment to help fulfill the goals it had expressly identified in the ADA and other disability rights laws.  This view is consistent with Supreme Court reasoning regarding the intersection of disability access and copyright protection, which has recognized Congress's attempt to protect both values.  *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 455, n.40 (1984) ("[m]aking a copy of a copyrighted work for the

---

[6] H. R. Rep. No. 101-485, pt. 2, at 108 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 391 , House Committee on Education and Labor ("the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all titles of this bill, should keep pace with the rapidly changing technology of the times.").  The Department of Justice, empowered with enforcing Titles II and III of the ADA, also takes the position that the ADA requires consideration of new technology.  *See* Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460 (proposed July 26, 2010).

convenience of a blind person is expressly identified by the House

Committee Report [on the Copyright Act] as an example of fair use").

Over time, in both its copyright and disability lawmaking, Congress has

consistently required the adaptation and transformation of copyrighted

works to facilitate equal access for people with disabilities.  *See* Brief of

*Amici Curiae* American Association of People with Disabilities, *et al.*, at

IIA-E.

The court below was therefore correct in considering the needs of

people with disabilities in the analysis of the right to fair use, and by

interpreting the Chafee Amendment to provide that the University of

Michigan is an authorized entity that can distribute digital copies of books

in its print collection to persons with print disabilities in the United States.

As the court noted, an important element of the fair use analysis is whether

the digitization of printed works is transformative. The court correctly

concluded that digitization was a transformative use in that it permits

search methods that, among other things, make the works usable by people

with print disabilities.  For this group, the transformative use applies in

another, more profound sense: it permits them to have access to, and make

use of, printed material in a manner commensurate with that of sighted

12

readers, thereby transforming the way in which they live and function in the wider world.  Harmonizing both areas of law ensures that Congress's intent is met in each.  Until we achieve a world where concepts like universal design are the norm, to meet Congress's goals of inclusion for people with disabilities, accessibility is achieved through modification and accommodation of existing structures, programs, services, and activities. The court's decision did just that.  Accordingly, we urge this Court to affirm the district court's judgment below.

Date:  June 4, 2013                    Respectfully submitted,

                                       Michael Waterstone

                                       Christopher Knauf

                                       Robert Dinerstein

                                       Michael Stein

## APPENDIX A

## LIST OF AMICI CURIAE DISABILITY LAW PROFESSORS

Institutional affiliations are provided for identification purposes only.

Bradley Areheart
Professor of Law
University of Tennessee College of Law

Yael Cannon
Assistant Professor of Law
The University of New Mexico School of Law

Ruth Colker
Distinguished University Professor and Heck-Faust Memorial Chair in
Constitutional Law
Moritz College of Law
The Ohio State University

Jeannette Cox
Professor of Law
University of Dayton

Elizabeth F. Emens
Professor of Law
Columbia Law School

Leslie P. Francis
Associate Dean for Faculty Research & Development
S.J. Quinney College of Law
Alfred C. Emery Distinguished Professor of Law and
Distinguished Professor of Philosophy
University of Utah

Paul Grossman
Adjunct Professor of Disability Law
Hastings College of Law, University of California

Jasmine E. Harris
Practitioner-in-Residence
Disability Rights Law Clinic
American University, Washington College of Law

Arlene Kanter
Bond, Schoeneck & King Distinguished Professor
Laura J. and L. Douglas Meredith Professor for Teaching Excellence
College of Law, Syracuse University

Lisa Lukasik
Assistant Professor of Law
Campbell University School of Law

Michael Perlin
Professor of Law
Director, Mental Disability Law Program
Director, International Mental Disability
New York Law School

Nicole Buonocore Porter
Professor of Law
University of Toledo College of Law

Stephen A. Rosenbaum
John & Elizabeth Boalt Lecturer
University of California at Berkeley School of Law

Laura Rothstein
Professor of Law and Distinguished University Scholar
University of Louisville Louis D. Brandeis School of Law

Louis S. Rulli
Practice Professor of Law, and
Director of Clinical Programs
University of Pennsylvania Law School

Len Sandler
Clinical Professor of Law
University of Iowa College of Law

Ani B. Satz
Associate Professor
Emory University School of Law

Michael A. Schwartz
Associate Professor of Law
Supervising Attorney, Disability Rights Clinic
Syracuse University College of Law

Paul Secunda
Associate Professor of Law
Marquette University School of Law

Anita Silvers
Professor and Chair
Philosophy Department
San Francisco State University

Michelle Travis
Professor of Law
University of San Francisco School of Law

Julie Waterstone
Clinical Professor of Law and
Director of the Children's Rights Clinic
Southwestern Law School

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(a)

I certify that this brief complies with the type-volume limitations of the Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,596 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point font of Book Antiqua type style.

Dated:   June 4, 2013                    By: /s/ Christopher Knauf

## **CERTIFICATE OF SERVICE**


I HEREBY CERTIFY that on June 4, 2013, a true and correct copy of

the foregoing was served on all counsel of record in this appeal via

CM/ECF pursuant to Local Rule 25.1(h).


Dated:   June 4, 2013                    By: /s/ Christopher Knauf